**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-CR-131-WBV-MBN** |
| **DEDRICK KEELEN** | **SECTION 'D'(5)** |

## ORDER AND REASONS

Before the Court is a Motion for New Trial, filed by defendant Dedrick Keelen.[1] The Motion is opposed,[2] and Mr. Keelen has filed a Reply.[3] After reviewing the briefs submitted by the parties, the applicable law, and after an extensive review of the entire record and trial transcript in this matter, the Motion for New Trial is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Dedrick Keelen, along with co-defendants Lionel Allen, Jawan Fortia, Delwin McLaren, and Bryan Scott, were charged in a 29-count Superseding Indictment alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count 1), Conspiracy to Distribute Controlled Substances (Count 2), Conspiracy to Possess Firearms in Furtherance of a RICO Conspiracy and in Furtherance of a Drug Conspiracy (Count 3), Assault with a Dangerous Weapon in Aid of Racketeering (Counts 4, 6, 12, 15, 17, 19, 24, and 28), Use and Carrying of a

---

[1] R. Doc. 891.
[2] R. Doc. 892.
[3] R. Doc. 893.

Firearm During and In Relation to a Crime of Violence and Drug Trafficking Crime (Counts 5, 7, 13, 14, 16, 18, 20, 25 and 29), Murder in Aid of Racketeering (Counts 8, 10, 21, 22, and 26), and Causing Death Through the Use of a Firearm (Counts 9, 11, 23 and 27).

In that multi-count Superseding Indictment, Mr. Keelen was named and charged in eight counts: Count 1, the RICO Conspiracy; Count 2, Conspiracy to Distribute Controlled Substances; Count 3, Conspiracy to Possess Firearms in Furtherance of a RICO Conspiracy and in Furtherance of a Drug Conspiracy; Count 21, Murder in Aid of Racketeering regarding the December 16, 2012 murder of Lawrence Burt; Count 22, Murder in Aid of Racketeering regarding the December 16, 2012 murder of Vivian Snyder; Count 23, Causing Death Through the Use of a Firearm; Count 24, Assault with a Dangerous Weapon in Aid of Racketeering; and Count 25, Use and Carrying of a Firearm During and In Relation to a Crime of Violence and Drug Trafficking Crime.

Mr. Keelen's trial, along with the trial of his co-defendants Lionel Allen, Jawan Fortia, Delwin McLaren,and Bryan Scott, took place from June 5, 2017 through June 19, 2017.[4] The jury returned a verdict of guilty as charged as to Mr. Keelen on all eight counts.[5]

On July 3, 2017, defendants, Allen, Keelen, Fortia, McLaren and Scott filed a Motion For New Trial.[6] The Government filed an Opposition to the Motion for New

---

[4] *See* R. Docs. 687, 688, 692-698, 702, 709.
[5] R. Docs. 709, 710.
[6] R. Doc. 720.

Trial on August 4, 2017.[7] In an Order and Reasons dated August 16, 2017, this Court denied the Motion for New Trial.[8]

Following the denial of the Motion for New Trial, Mr. Keelen was sentenced on September 27, 2017, to a term of life imprisonment as to Counts 1, 2, 21, 22, and 23, and a term of 240 months as to Counts 3 and 24, with all terms to be served concurrently.[9] Mr. Keelen was also sentenced to serve 120 months for Count 25, which must be served consecutively to any other sentence.[10] A term of five years supervised release following any release from imprisonment was also imposed.

On February 28, 2019, Mr. Keelen filed the instant Motion, seeking a new trial based on newly discovered evidence.[11] Mr. Keelen asserts that on June 20, 2018, the Government sent a letter to all of the defendants relative to Irian Dorsey, a trial witness who had testified for the Government, in which the Government advised that:

> The government has recently learned, through an attorney proffer, that Mr. Dorsey may have been involved in another murder and non-fatal shooting that was not elicited during the trial [of defendant Keelen and his co-defendants.] According to this attorney proffer, Mr. Dorsey, Mr. Allen, Mr. Scott, and a fourth known individual, participated in various degrees, in the murder of Stephen Anderson and the non-fatal shooting of Jovall Edwards, which occurred on February 26, 2013. The government did not turn this

---

[7] R. Doc. 727.
[8] R. Doc. 729.
[9] R. Docs. 759, 760.
[10] R. Docs. 759, 760.
[11] R. Doc 891.

information over prior to trial because it was unaware of this information at that time.[12]

In his motion, Mr. Keelen goes into great detail recounting the testimony at trial by the Government's witnesses, indicating the specific testimony elicited by each witness.[13] Mr. Keelen then argues that a new trial is warranted in this case based on newly discovered evidence, namely, the letter from the Government concerning witness, Irian Dorsey.[14]

Mr. Keelen correctly asserts that, in order to be granted a new trial on the grounds of newly discovered evidence, the defendant bears the burden of showing: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to the defendant's lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.[15] Mr. Keelen notes that this is also known as "the *Berry* Rule."[16]

Mr. Keelen then asserts the following:

> The information relative to Irian Dorsey would most certainly be material to the case, as he testified at several points against Dedrick Keelen. Specifically, he claimed that Defendant sold drugs (June 6, 2017 Trial Transcript, pg. 96, 160); that he saw Mr. Keelen with different firearms (pg. 98, 161); that Mr. Keelen knew which gun was used by Lionel Allen and Jawan Fortia to kill Vennie "Funk" Smith (pg. 100-101); that Mr. Keelen tried to solicit a firearm from

---

[12] Mr. Keelen directs the Court to, "See Government Letter, attached to Jawan Fortia's Motion for New Trial [R. Doc. 889] under seal." (R. Doc. 891-1 at p. 5). The Court has reviewed the record and does not see the Government's June 20, 2018 letter in the record. Nonetheless, the Court has been provided a copy of that letter and attaches that letter to this Order and Reason ***under seal*** as R. Doc. 905.
[13] R. Doc. 891-1, pp. 6-19.
[14] *Id.* at pp. 1, 20-26.
[15] *Id.* at p. 20 (citing *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011)).
[16] R. Doc. 891-1, p. 20, n.106.

> Dorsey to 'deal with' Javarion 'Bop' Jones, which resulted in the shooting of an innocent bystander (pg. 102-106); that Mr. Keelen was involved in the homicides of Vivian Snyder and Lawrence Burt (pg. 163); and that Mr. Keelen was present when Travis Thomas was shot (pg. 166)."[17] Defendant argues "the fact that Dorsey likely lied to government agents, as well as being involved in another murder, would be highly relevant to his credibility before the jury.[18]

Mr. Keelen concedes that, "Though it [the recently disclosed information in the Government's letter of June 20, 2018] does not directly controvert Mr. Dorsey's testimony, it does greatly strengthen any argument that the wealth of YMM [Young Melph Mafia] information he supposedly presented was fabricated-information that a jury could properly consider in determining guilt or innocence in a new trial. The evidence is material but not cumulative."[19]

The Government opposes the Motion, but agrees that the *Berry* Rule is the appropriate test to determine whether a new trial should be granted in this case.[20] The Government concedes that the first two prongs of the *Berry* Rule have been satisfied, since the evidence was newly discovered and unknown to Mr. Keelen at the time of the trial, and the failure to detect the evidence was not the result of lack of due diligence by the defendants.[21] The Government then asserts that Mr. Keelen fails to meet his burden of proving the third and fourth prongs of the *Berry* Rule.

---

[17] R. Doc. 891-1, p. 22.
[18] *Id.*
[19] *Id.*, p. 23.
[20] R. Doc. 892, p. 5 (citing *United States v. Sullivan*, 112 F.3d 180 (5th Cir. 1997) (noting four factors for the *Berry* test, combining the third and fourth factor in *Piazza* ((3) the evidence is not merely cumulative or impeaching" and "(4) the evidence is material) into one factor, "the evidence is material, not merely cumulative or impeaching."))
[21] R. Doc. 892, p. 5.

Specifically, the Government argues that the purported new evidence is not material, but merely cumulative and impeaching, and is not likely to produce an acquittal.[22]

Regarding the Government's argument that the newly provided information is cumulative, the Government asserts that:

> Assuming that the new evidence is factually true, the government is at a loss to understand how this new information could damage Dorsey's credibility further to the point that a new trial is warranted. At trial, Dorsey openly testified on direct examination to his involvement with the Mid-City killers and the Young Melph Mafia, his participation in two past murders, and his firearm convictions.[23]

In fact, the Government suggests that the new information "does not undermine Mr. Dorsey's testimony about the nature of his relationship to the YMM—it actually strengthens it."[24] The Government then spends much of its Opposition brief detailing the extensive cross-examination of Mr. Dorsey by defense counsel, even mentioning how defense counsel "assailed" Mr. Dorsey's testimony and credibility during closing arguments.[25] Finally, the Government strongly denies that the introduction of the newly discovered evidence would have resulted in an acquittal for Mr. Keelen.[26] The Government directs the Court to its Opposition to the first Motion for New Trial, where the Government asserted that, "Dorsey's testimony did not exist in a vacuum—that his testimony, along with all of the witnesses who cooperated with

---

[22] *Id.* at p. 6.
[23] *Id.* at p. 7.
[24] *Id.*
[25] *Id.* at pp. 8-10.
[26] *Id.* at pp. 19-21.

the government, cross corroborated key facts as they related to the specific crimes committed by the entire YMM defendants."[27]

In response, Mr. Keelen argues that the Government misses the point when it claims that the new evidence is merely cumulative.[28] Mr. Keelen argues that, "without this concrete evidence that Dorsey lied, the defense had no proof of those lies."[29] Regarding the fourth prong of the *Berry* Rule, that the evidence will probably result in an acquittal, Mr. Keelen points out that of the 66 witnesses called by the Government at trial, only three, including Mr. Dorsey, testified as to Mr. Keelen's guilt or innocence.[30] Mr. Keelen contends that, "this new evidence that directly addresses Dorsey's testimony, and changes the tenor of what defense counsel could have argued at trial, tests the original reasoning of the district court [in denying the original Motion for New Trial], and would in fact suggest that a new trial is warranted."[31]

## II. LAW AND ANALYSIS

When a defendant files a motion for new trial based upon newly discovered evidence, the United States Fifth Circuit Court of Appeals applies a four-part test known as the "*Berry* Rule."[32] The four factors to be considered are: "(1) the evidence was newly discovered and unknown to the defendant at the time of the trial; (2) failure to detect the evidence was not the result of lack of due diligence by the

---

[27] *Id.* at p.19 (*citing* R. Doc. 720).
[28] R. Doc. 893.
[29] *Id.* at p. 4.
[30] *Id.* at p. 5.
[31] *Id.* at p. 6.
[32] *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997).

defendants; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence will probably produce an acquittal."[33] A motion for new trial must be denied if the defendant fails to demonstrate any one factor.[34]

Here, the Government has conceded that Mr. Keelen has satisfied the first two prongs of the *Berry* Rule, namely, the evidence was newly discovered and unknown to Mr. Keelen at the time of the trial, and that the failure to detect the evidence was not the result of lack of due diligence by the defendants.[35] Accordingly, the Court will focus on whether Mr. Keelen has met his burden of proving the third and fourth prongs of the *Berry* Rule.

### A. The Third Prong of the *Berry* Rule: The Evidence is Material, Not Merely Cumulative or Impeaching.

The question before the Court is whether the information provided in the Government's June 20, 2018 letter is material. In the letter, the Government informed defense counsel that one of the Government's witnesses, Irian Dorsey, "may have been involved in another murder and non-fatal shooting that was not elicited during the trial." It is not clear to the Court whether this information regarding Mr. Dorsey has been proven, is alleged but not proven, or whether it is under investigation. However, the Court finds that it is evident from the letter that neither the Government nor the defendants were aware that Mr. Dorsey may have been involved in another murder and shooting when he testified.[36]

---

[33] *Id.* (citing *United States v. Ardoin*, 19 F.3d 177, 181 (5th Cir. 1994), *cert. denied,* 513 U.S. 933 (1994)).
[34] *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011).
[35] R. Doc. 892, p. 5.
[36] A separate question exists as to whether the defendant, *even if this information had been known*, would have been allowed to question the witness regarding it. The Court notes that the information

The United States Supreme Court has held that, "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."[37] The Supreme Court further held that, "It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record."[38] Such is the case here. A review of the entire record is essential for a determination of whether the newly disclosed information creates a reasonable doubt that did not otherwise exist.

On its face, the newly discovered evidence suggests that Mr. Dorsey, a witness at trial, may have been involved in another murder and a shooting, which purportedly occurred prior to the trial in this matter. The record confirms that Mr. Dorsey was a witness for the Government in this case, and that Mr. Dorsey provided testimony regarding Mr. Keelen as detailed in Defendant's motion for new trial.[39] Specifically, Mr. Dorsey testified that he witnessed Mr. Keelen "sell drugs maybe two or three times."[40] Mr. Dorsey further testified that he had seen Mr. Keelen with handguns, but had never seen him use a handgun.[41] Mr. Dorsey testified that he and Mr. Keelen were with co-defendants, Lionel Allen, Bryan Scott, and Jacobi Boyd, when Mr. Boyd

---

provided to the government and counsel indicates that the witness "may have been" involved in another murder and shooting. It would have been up to the trial court to rule on whether the witness could have been questioned about something that did not result in either an arrest or conviction. This court does not offer an opinion on that question.
[37] *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).
[38] *Id.*, 427 U.S. at 112, 96 S.Ct. at 2402.
[39] R. Doc. 891-1.
[40] Trial Transcript from June 6, 2016, pp. 96, 160-161.
[41] *Id.* at pp. 98, 161.

shot and killed Travis Thomas and when he shot Royal Risen.[42] As the following colloquy shows, Mr. Dorsey was questioned by defense counsel regarding his veracity:

> Q: And it's important to always tell the government the truth when you meet with them; isn't that correct?
> A: Yes.
> Q: But you haven't always one that, have you?
> A: No.[43]

During closing arguments, Mr. Keelen's counsel and counsel for his co-defendants passionately argued on behalf of their clients, calling the Government's witnesses "a bunch of liars," and further asserting that, "They [the Government] brought in here murderers. They brought in here liars."[44] Defense counsel specifically asserted that four of the Government's witnesses – Mark Rayfield, Irian Dorsey, Passion Cobbins, and Jacobi Boyd – were "a bunch of liars."[45] Mr. Keelen's counsel argued, "Irian Dorsey doesn't care about Dedrick Keelen, and he will throw him under the bus to work down the life-plus-ten years he's facing on his own murders."[46] Counsel for Mr. Allen, one of Mr. Keelen's co-defendants, likewise argued that, "We also heard from Mr. Dorsey who I've already gone over. He's a killer, he's serving life, and he's trying to get out."[47]

These quotes from the closing arguments are illustrative of the arguments made by defense counsel to the jury regarding Mr. Dorsey's credibility. They are noted for two reasons: First, the triers of fact, the members of the jury, were in the

---

[42] *Id.* at pp. 109 – 115.
[43] *Id.* at p. 161.
[44] Trial Transcript, June 14, 2017, p. 36, 57.
[45] *Id* at p. 36.
[46] *Id.* at p. 52.
[47] *Id.* at p. 66.

best position to judge credibility. They heard all of the witnesses' testimony, and they heard the arguments of counsel questioning and assailing Mr. Dorsey's credibility. It remained their role to determine which witnesses to believe and which not to believe. Secondly, this does not appear to be a case where a witness with an untarnished reputation testified, only to later find out that the witness had credibility issues. It was clear during the trial, as eloquently and passionately brought out in the closing arguments, that Mr. Dorsey's credibility was already very much in question at the time he testified, largely because of his past involvement in violent crimes. In his Reply brief in support of the instant Motion, Mr. Keelen argued that the newly discovered information "changed the tenor" of what the defense counsel could have argued at trial.[48] The Court is not persuaded by this argument. Instead, the Court finds that defense counsel quite passionately argued at trial that Mr. Dorsey lacked credibility due to, among other reasons, his violent criminal history.

The transcript further reflects that Mr. Dorsey was not the only witness to provide evidence against Mr. Keelen. A review of the trial transcript reveals that Jefferson Parish Sheriff's Deputy Leonard Standeford testified that he and his partner, Detective Nick Ory, arrested Mr. Keelen on May 9, 2012, after he discarded a bag of suspected narcotics when he was stopped by the officers.[49] Mr. Keelen was ultimately arrested for possession of cocaine.[50] Derrick Carter, another trial witness, provided extensive incriminating evidence against Mr. Keelen, including that he had

---

[48] R. Doc. 893, p. 6.
[49] Trial Transcript from June 8, 2017, pp. 184-193.
[50] *Id*. at p. 193.

seen Mr. Keelen with guns, he had seen Mr. Keelen dealing drugs, and he had heard Mr. Keelen discussing shootings with other members of the Young Melph Mafia.[51]

Witness Mark Rayfield corroborated that testimony by testifying that he, too, saw Mr. Keelen with guns and selling drugs.[52] Mr. Rayfield further testified that in December 2012, he saw Mr. Keelen get an AK rifle from "Out the yard" to retaliate on someone who had "upped a gun on him."[53] Mr. Rayfield testified that following that interaction with Mr. Keelen, and after learning that an innocent woman [Ms. Snyder] had been killed, Mr. Rayfield confronted Mr. Keelen about the woman's death.[54] Mr. Rayfield testified that when Mr. Keelen told him that he was telling the woman's family members that someone else killed her, Mr. Keelan, "Just—he just had a smirk on his face. That was it, and he walked off.[55]

Two other witnesses, Mr. Deontre "Soulja" Hills and Passion Cobbins, also identified all of the defendants, including Mr. Keelen, as members of YMM.[56] Ms. Cobbins further testified that she had seen Mr. Keelen with guns and had seen him selling drugs "every day."[57] Ms. Cobbins also testified that Mr. Keelen told her that he was "tripping off them trams [tramadol pills] last night and I made a mistake and killed Ms. Snyder."[58]

---

[51] *Id.* at pp. 7-87.
[52] *Id.* at pp. 222, 264-265.
[53] *Id.* at pp. 242-245.
[54] *Id.* at pp. 246-247.
[55] *Id.* at p. 248.
[56] Trial Transcript from June 6, 2017, pp. 318-321; Trial Transcript from June 12, 2017, pp. 157-158.
[57] Trial Transcript from June 12, 2017, pp. 164, 165.
[58] *Id.* at p. 179.

Finally, witness Jacobi Boyd testified regarding his knowledge about the defendant, including, among other information, his knowledge of the double homicide of victims Lawrence Burt and Vivian Synder:

> A. When I got out [of jail], I talked to Dedrick about it hisself [sic].
> Q. You talked to him face to face?
> A. Yes, sir.
> Q. When did that occur, do you remember?
> A. I don't remember the date, but it's like three weeks or two weeks after I got out.
> Q. Okay. What did he tell you?
> A. He was, like, This is what I was doing. And he told me that him and Dwayne went around there to take the pressure off of me and Lionel.
> Q. Let me stop you there. So he gave a reason as to why the shooting occurred?
> A. Yes, sir.
> Q. What was that reason?
> A. To take the pressure off of me and Lionel.
> Q. What did that mean? Why would he do that?
> A. Because we was in jail for a shooting around there.
> Q. Then what else? What else did he say?
> **A.** And he said that him and Dwayne went around there to take the pressure off of us. And he said that he didn't know Lawrence [Burt] got killed, but the dude—he thought the dude was Daniel Watson. And the dude tried to get out of the car and run, but they pinned him to the ground.
> Q. Did he say who did the shooting?
> A. Hisself [sic] and Dwayne.
> Q. And he mentioned Daniel Watson as the intended target?
> A. Yes, sir.
> Q. Why would Daniel Watson be a target?
> A. Because he was with 'Bop,' Jevarion Jones.
> Q. He was a friend of Jevarion Jones's?
> A. Yes, sir.
> Q. Did Mr. Keelen talk about the kind of gun he used?
> A. A rifle.[59]

---

[59] Trial transcript, June 12, 2017, pp. 32-33.

Boyd further testified:

> Q. Was that the only conversation you had with Mr. Keelen about the shooting?
> A. No, sir.
> Q. You had another subsequent conversation?
> A. Yes, sir.
> Q. Tell us about that, please.
> A. Well, I knew that I could make him mad because he was high off of pills, so I was, like, messing with him about his girlfriend. And he got mad at me. He was, like, "I'm like that; you know, I got two under my belt." And I told him it don't count.
> Q. All right. Let's stop there. So he got mad at you?
> A. Yes, sir.
> Q. And what did he say?
> A. "I'm like that; I got two under my belt."
> Q. When he said, "I'm like that," what does that mean?
> A. Like, he like, I were pulling the trigger.
> Q. He was threatening you?
> A. Basically.
> Q. And when he says, "I have two under my belt," what does that mean?
> A. Two murders.[60]

Finally, witness Boyd testified to the defendant's role in the shooting and homicide of Travis Thomas in May, 2013. Mr. Boyd testified that he, along with co-defendants Allen, Scott, Irian Dorsey and defendant Keelen followed a car from the Encore Lounge onto the interstate "to shoot at them." He was asked "Did everyone in the car know that that was going to happen?" and answered "Yes."[61] As demonstrated herein, the Court finds that there was testimony from several witnesses, not only Mr. Dorsey, to support the jury's verdicts against this defendant.

---

[60] Trial transcript, June 12, 2017, pp. 33-34.
[61] *Id.*, p. 41.

Further, as noted in the cases cited earlier, the Fifth Circuit does not permit new trials for newly discovered evidence that is merely cumulative or impeaching.[62] Instead, under the third prong of the *Berry* Rule, a defendant bears the burden of showing that the newly discovered evidence is material, and not merely cumulative or impeaching.[63] Having reviewed the testimony elicited at trial, as well as the new information contained in the June 20, 2018 letter provided by the Government, the Court finds that Mr. Keelen has failed to prove that the new evidence is material, rather than merely cumulative or impeaching. As such, Mr. Keelen has failed to bear his burden of proving that third prong of the *Berry* Rule has been met in this case.

Because a motion for new trial must be denied if the defendant fails to demonstrate any one factor of the *Berry* Rule,[64] the Court need not determine whether Mr. Keelen has satisfied the fourth factor of the *Berry* Rule.

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Motion for New Trial,[65] filed by defendant, Dedrick Keelen, is **DENIED**.

New Orleans, Louisiana this 24th day of January, 2020.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[62] *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997).
[63] *Id.*
[64] *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011).
[65] R. Doc. 891.